**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-3118

ARC GREENWOOD VILLAGE, INC. D/B/A BROOKDALE GREENWOOD VILLAGE – ALR

Petitioner,

v.

BARBARA PARISH, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HELEN EVANS, DECEASED

Respondent.

---

# PETITION TO COMPEL ARBITRATION

---

Petitioner ARC GREENWOOD VILLAGE, INC. d/b/a BROOKDALE GREENWOOD VILLAGE – ALR ("Brookdale" or "Petitioner"), by and through its counsel, Quintairos, Prieto, Wood & Boyer, P.A., submits pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, its Petition to Compel Arbitration of Respondent's claims against it and its employee, in accordance with an Arbitration Agreement executed on behalf of Helen Evans on January 22, 2021. In support of its Petition, Brookdale alleges as follows:

## JURISDICTION

1. Brookdale petitions this Court for an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 4.

2. Section 4 of the FAA allows petitioners to seek orders compelling arbitration so long as there is "an independent jurisdictional basis" for the Court to exercise jurisdiction over the parties. *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 US 576, 581-82 (2008).

3. An independent jurisdictional basis exists in this case pursuant to 28 U.S.C. § 1332.

4. Brookdale was, and is, a corporation incorporated in the State of Tennessee, with its principal place of business in the State of Tennessee. Brookdale is now and was at all relevant times a citizen of the State of Tennessee for purposes of diversity jurisdiction.

5. Upon information and belief, Barbara Parish is an individual who resides and is domiciled in Castle Pines, Colorado.

6. Therefore, Respondent is a citizen of Colorado.

7. To satisfy the second prerequisite for diversity jurisdiction, a party need only state a plausible allegation that the amount in controversy exceeds $75,000. *See, e.g.*, *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

8. Respondent filed a complaint against Brookdale and others in Arapahoe County District Court, in the State of Colorado. (**Exhibit A**, Compl.).

9. Respondent's pleading in Arapahoe County District Court indicates that Plaintiff "is seeking a monetary judgment against another party of more than $100,000.00 . . ." (***Id.***, p. 20).

10. For purposes of diversity jurisdiction, the Complaint establishes that she seeks in excess of $75,000 in disputed damages, exclusive of interest and costs. *See Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1272-73 (10th Cir. 2016) (noting that state court civil cover sheet unambiguously indicated the amount in controversy was more than $100,000 and that there was "no reason not to credit an assertion by an officer of the court on a matter of significant consequence in the state court proceeding.").

11. In light of the foregoing, the amount in controversy exceeds $75,000.

12. The Court does not "look through" to the Complaint in Arapahoe County District

Court to ascertain diversity of citizenship for a petition to compel arbitration filed in federal court pursuant to Section 4 of the FAA. *Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 325 (2d Cir. 2017); *Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 871 (4th Cir. 2016); *Northpoint Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999); *First Frankin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Jerry Erwin Associates, Inc. v. Estate of Asher*, 290 F. Supp. 3d 1213, 1231 (D.N.M. 2017).

13. Instead, diversity of citizenship involving a FAA petition to compel arbitration is satisfied by looking "'only to the citizenship of the parties in the action before it' — that is, the 'parties to the petition to compel' as well as any indispensable parties who must be joined pursuant to [Rule] 19." *Swain*, 867 F.3d at 325 (quoting *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995)).

14. The individual named in the Arapahoe County District Court action, the Executive Director of Brookdale, is not an indispensable party. *See Rutherford*, 605 F.3d at 491 (finding non-diverse nursing home administrators who were named as defendants in the underlying state tort action were not necessary and indispensable parties in the nursing home's federal court action to compel arbitration) (*see also Bethany Nursing v. Amaro*, 1:22-cv-03138-RM-SBP, 2024 WL 1286257, *10 (D. Colo. Mar. 11, 2024) (Court agreed that the Executive Director of the nursing facility was not an indispensable party)); *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1179 (D.N.M. 2012) (same); *Canyon Sudar Partners, LLC v. Cole*, No. 3:10-1001, 2011 WL 1233320, *3 (S.D.W.Va. Mar. 29, 2011) (same); *Mariner Healthcare, Inc.*, No. Civ. A. 404CV243PA, 2005 WL 1711614 (N.D. Miss. July 21, 2005) (same). *See also SSC*

*Pueblo Operating Co., LLC v. Earl*, 1:22-CV-00033-CMA-MEH, 2022 WL 3280158 (D. Colo. Aug. 11, 2022) (order denying motion to dismiss petition to compel arbitration).

15. Since complete diversity exists between the parties to the Petition to Compel Arbitration, the other party named in the Arapahoe County District Court action is not an indispensable party, and the amount in controversy exceeds $75,000, the Court has an independent basis to exercise jurisdiction over the Petition to Compel Arbitration. *See* 28 U.S.C. § 1332.

**VENUE**

16. In the Arbitration Agreement, the parties agreed that the arbitration proceedings, including the hearing, "shall take place in the county in which the Community is located, unless agreed to otherwise by mutual consent of the parties or otherwise ordered by the arbitrator." (**Exhibit B**, Arb. Agree., p. 9).

17. Venue is proper in this Court because the parties agreed to arbitrate their dispute in Colorado. *Ansari v. Qwest Communications, Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (relying on a list of cases as well as 9 U.S.C. § 4).

**STATEMENT OF FACTS**

18. On or about January 29, 2021, Helen Evans was admitted to Brookdale — an assisted living residence community in Greenwood Village, Colorado.

19. In connection with Ms. Evans' admission to Brookdale, Ms. Evans' daughter and legal representative, Barbara Parish, executed a voluntary arbitration agreement and residency agreement as part of the admission process on January 22, 2021. (**Exhibit B**, Arb. Agree.).

20. The scope of the Arbitration Agreement encompasses "[a]ny and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the

Community . . ." (**Exhibit B**, Arb. Agree., p. 8).

21. The Arbitration Agreement "[excludes] any action for involuntary transfer or discharge or eviction, and [includes] disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of Local, State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claim is asserted . . ." (**Id.**).

22. Ms. Parish agreed that the Arbitration Agreement binds "any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity" and that the "Arbitration Provision shall survive [Ms. Evans'] death." (**Id.**, p. 10).

23. Ms. Parish, individually and as Ms. Evans' personal representative, filed tort claims against Brookdale in Arapahoe County related to care and services Ms. Evans received at Brookdale during her residency. The Complaint alleges claims arising out of alleged negligence, violation of the Colorado Consumer Protection Act related to Ms. Evans' residency at Brookdale, and wrongful death. Accordingly, Respondent improperly filed claims in state court that should have been submitted to arbitration. (*See generally* **Exhibit A**, Compl.; **Exhibit B,** Arb. Agree.).

## LEGAL STANDARD

24. The Federal Arbitration Act ("FAA") applies to all arbitration agreements "relating to interstate commerce." *Comanche Indian Tribe of Oklahoma v. 49, LLC*, 391 F.3d 1129, 1132

(10th Cir. 2004).

25. Courts are instructed to view transactions associated with an arbitration agreement broadly to determine whether they relate to or "affect" interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 273-81 (1995); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

26. Ultimately, the determination of whether the FAA applies to an arbitration agreement based on activities affecting interstate commerce "is not a rigorous inquiry." *Grohn v. Sisters Charity Health Servs.*, 960 P.2d 722, 725 (Colo. App. 1998).

27. Once an arbitration agreement comes under the broad applicability of the FAA, it is deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

28. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and under this policy, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).

29. Courts determine whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

30. When deciding that issue, courts typically apply the law governing the formation of contracts in the particular state in question. *See id.*

31. However, a court's state law contract analysis must also give "due regard… to the federal policy favoring arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 475-

76 (1989).

32. Federal law preempts state law that renders arbitration agreements unenforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

33. Accordingly, the Court may only invalidate an arbitration agreement governed by the FAA based on "generally applicable contract defenses" like fraud or unconscionability. *Id*. 40. Once a valid arbitration agreement is recognized, courts determine whether the specific dispute between the parties falls within the scope of the agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

34. Once the Court determines both a valid arbitration agreement exists and the dispute falls within the scope of the agreement, the FAA mandates a stay of judicial proceedings "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3; *see also Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016).

**THE FAA APPLIES TO THE ARBITRATION AGREEMENT**

35. The FAA applies to the Arbitration Agreement because it affects interstate commerce. *See Comanche Indian Tribe of Oklahoma*, 391 F.3d at 1132.

36. Because interstate commerce can be generally affected in the aggregate, rather than by a specific showing, *see Citizens Bank*, 539 U.S. at 56-57, facilities like Brookdale are routinely found to affect interstate commerce.

37. "Nursing homes through general practice, which includes basic daily activities like receiving supplies from out-of-state vendors and payments from out-of-state insurance companies or the federal Medicare program, affect interstate commerce." *See Vicksburg Partners, LP v.*

*Stephens*, 911 So.2d 507, 515 (Miss. 2005).

38. Indeed, the provision of health care service is generally considered to affect interstate commerce. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 328-33 (1991) (hospital's purchase of out-of-state medicines and acceptance of out-of-state insurance established interstate commerce).

39. Courts across the country have found facility activities like those mentioned above are "sufficient to fulfill the interstate commerce requirement of the FAA." *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (listing cases from courts in New Jersey, Alabama, Oklahoma, and Massachusetts); *Ping v. Beverly Enterprises, Inc.*, 376 S.W. 3d 581 (Ky. 2012) (listing additional cases from courts in Mississippi, Illinois, New Mexico, Washington, and Georgia).

40. Colorado generally recognizes that the medical industry affects interstate commerce. *See Grohn*, 960 P.2d at 725-26 (holding that medical industry involves interstate commerce); *Stephen v. Brookdale Senior Living Cmtys., Inc.*, 1:12-cv-00989-LTB, 2012 WL 4097717 (D. Colo. Sep. 17, 2012); *see also Moffett v. Life Care Ctrs. Of America*, 219 P.3d 1068 (Colo. 2009).

41. Like the facilities identified in the cases above, Brookdale's provision of services and activities generally affects interstate commerce.

42. Brookdale receives payments from the Medicare program.

43. Likewise, Brookdale receives payments from the Colorado Medicaid Program, which is substantially funded by the federal government.

44. Brookdale additionally purchases goods and services, including medical supplies,

business office supplies, and furniture, from vendors located in multiple states.

45. Because Brookdale's activities and services sufficiently affect interstate commerce, the FAA governs the Arbitration Agreement. *See, e.g., Spradlin*, 893 F. Supp. 2d at 1184.

46. Further, in the Arbitration Agreement, the parties expressly agreed that the Arbitration Provision, the Residency Agreement, and the Resident's stays at the Community "substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") shall exclusively apply to the interpretation and enforcement of this Agreement, and shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act . . ." (**Exhibit B**, Arb. Agree., p. 8).

**THE FAA PREEMPTS COLORADO LAW HOSTILE TO ARBITRATION**

47. Under Section 13-64-403 of Colorado's Health Care Availability Act ("HCAA"), an arbitration agreement between a resident or a resident's agent and a health care entity must meet certain requirements, such an including specific language, or else it is deemed invalid. *See, e.g., Colorow Health Care, LLC v. Fischer*, 2018CO52M.

48. The HCAA's arbitration form requirements are not "generally applicable contract defenses" and are hostile to arbitration agreements. *See Concepcion*, 563 U.S. 333 at 339.

49. Therefore, the FAA preempts the HCAA's arbitration provisions. *See id.*; *see also* C.R.S. § 13-64-403.

50. One Colorado case has been interpreted as applying the McCarran-Ferguson Act to "reverse preempt" the FAA with respect to the HCAA's requisite arbitration language. *See Allen v. Pacheco*, 71 P.3d 375, 381 (Colo. 2003).

51. The McCarran-Ferguson Act protects States' ability to regulate insurance and

"reverse preempts" any act of Congress that "specifically relates to the business of insurance." *Espinosa v. Nexion Health, Inc.*, 1:14-cv-00752-LTB-MEH, 2014 WL 2781139, at *2 (D. Colo. June 19, 2014) (citing 15 U.S.C. § 1012(b)).

52. "*Allen* is not binding on this Court because it is principally concerned with the interpretation of federal law; that is, whether the McCarran-Ferguson Act is applicable to § 13-64-403(3) & (4) of the [HCAA]." *Espinosa*, 2014 WL 2781139, at *2; *see also Watermark Harvard Square, LLC v. Calvin*, 1:17-CV-00446-RM-KMT, 2018 WL 1166707 (D. Colo. Mar. 6, 2018), *adopted by* 2018 WL 1952587 (D. Colo. Mar. 29, 2018).

53. The arbitration agreement in *Allen* concerned "the relationship between an HMO 'medical service provider' and 'patient'" which is "the relationship between a 'medical insurer' and 'insured.''" *Id.* (citing *Allen*, 71 P.3d at 383 n. 9).

54. Here, in contrast to *Allen* and identical to *Espinosa* and *Watermark,* the Arbitration Agreement is "wholly unrelated to the business of insurance." *Espinosa*, 2014 WL 2781139, at *2; *Watermark*, 2018 WL 1166707, at *7-8.

55. Therefore, the McCarran-Ferguson Act does not apply, the FAA preempts the HCAA's arbitration requirements, and the Arbitration Agreement is enforceable despite the absence of HCAA language or any other purported deficiency under C.R.S. § 13-64-403. *Espinosa*, 2014 WL 2781139, at *3; *Morrison v. Colorado Permanente Medical Group, PC.*, 983 F. Supp. 937 (D. Colo. 1997); *Watermark*, 2018 WL 1166707, at *7-8.

**A VALID AGREEMENT TO ARBITRATE EXISTS IN THIS CASE**

56. The FAA simply requires "an agreement in writing" for arbitration to proceed. 9 U.S.C. § 3.

57. Similarly, under Colorado contract law, an agreement to arbitrate exists if a party manifests an intent to be bound by the arbitration agreement, *E-21 Engineering v. Steve Stock & Assocs*., 252 P.3d 36, 39 (Colo. App. 2010), which "can be demonstrated by the parties' . . . writings". *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986).

58. Undeniably, the Arbitration Agreement is an agreement in writing. (**Exhibit B**, Arb. Agree).

59. While the FAA does not require a signature to enforce its written requirement, *see, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005), the Arbitration Agreement is signed by Brookdale and Ms. Parish as legal representative of Ms. Evans. (**Exhibit B**, Arb. Agree.).

60. Therefore, an arbitration agreement exists.

61. Since the FAA does not change "background principles" of state contract or agency law binding non-signatories to an agreement, *see, e.g., MSPBO, LLC v. Garmin Intern., Inc*., 1:13-CV-02287-PAB-KMT, 2014 WL 4477931, at *3 (D. Colo. Mar. 30, 2014), Colorado agency law governs Ms. Parish's authority to execute the Arbitration Agreement.

62. Colorado agency law "attributes the legal consequences of one person's actions to another person on three distinct bases, two of which are pertinent here: apparent authority and actual authority." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 396 P.3d 651, 655 (Colo. 2017) (identifying the third basis as *respondeat superior*).

63. An agent has actual authority when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." *Id*. at 656.

64. Actual authority encompasses "concepts of both express and implied authority." *Id.* (citing *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994)).

65. Express actual authority "exists when the principal directly states that the agent may perform a particular act on the principal's behalf." *Id.*

66. Implied actual authority "embraces the authority to perform acts that are 'incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent.'" *Id.* (quoting *Willey*, 876 P.2d at 1264).

67. Implied actual authority additionally exists when "an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestations in light of the principal's objectives and other facts known to the agent." *Id.* (quoting the Restatement (Third), § 2.01 cmt. b).

68. Consequently, an actual authority analysis examines the agent's belief that she has the ability to act on behalf of the principal, based upon (1) the principal expressly stating to the agent that she can so act; (2) the principal implicitly directing the agent to act to accomplish the main authority expressly delegated; or (3) the principal implicitly directing the agent to act based upon a reasonable interpretation of the principal's manifestations and objectives. *See id.* at 655-656.

69. Here, Ms. Evans authorized Ms. Parish to act on her behalf in all respects as her legal representative, and she provided Ms. Parish the power to enter into contracts on her behalf. Indeed, Ms. Parish specifically identified herself as Ms. Evans' legal representative in Ms. Evans' admission paperwork. (**Exhibit B**, Arb. Agree.).

70. Accordingly, Ms. Evans expressly authorized Ms. Parish to enter into contracts like

the Arbitration Agreement.

71. Even if Ms. Evans' grant of authority as legal representative did not expressly authorize her to execute the Arbitration Agreement on Ms. Evans' behalf, it was implied for the same reasons discussed above.

72. Therefore, Ms. Parish had actual authority to enter into the Arbitration Agreement on Ms. Evans' behalf.

73. The apparent authority analysis examines a third party's belief that an agent can act on behalf of a principal. *State Farm*, 96 P.3d at 656.

74. "An agent has apparent authority . . . when the third party reasonably believes, based on the principal's manifestations, that the agent has authority to act on behalf of the principal." *Id*. (citing the Restatement (Third), § 2.03).

75. Apparent authority protects third parties who rely upon their good faith belief that an agency relationship exists between the principal and apparent agent. *See Rush Creek Solutions, Inc. v. Ute Mt. Ute Tribe*, 107 P.3d 402, 407 (Colo. App. 2004).

76. Brookdale reasonably believed Ms. Parish could execute the Arbitration Agreement on Ms. Evans' behalf because Ms. Parish was designated as Ms. Evans' legal representative. (*See* **Exhibit B**).

77. There is no evidence Ms. Evans objected to Brookdale's staff about Ms. Parish signing documents on her behalf, or that Ms. Evans withdrew Ms. Parish's agency authority in the presence of Brookdale's staff.

78. Due to Ms. Evans' acquiescence to Ms. Parish's conduct, Brookdale reasonably interpreted Ms. Evans' actions as authorizing Ms. Parish to execute documents on her behalf, and,

therefore, Ms. Parish had apparent authority to execute the Arbitration Agreement.

**THE SCOPE OF THE ARBITRATION AGREEMENT EXTENDS TO RESPONDENT'S CLAIMS BECAUSE THE AGREEMENT CONTEMPLATES TORT CLAIMS**

79. The Arbitration Agreement broadly encompasses "[a]ny and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community . . ." and "[excludes] any action for involuntary transfer or discharge or eviction, and [includes] disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of Local, State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claim is asserted . . ." (**Exhibit B**, Arb. Agree., p. 8).

80. This sweeping language includes Respondent's claims against Brookdale, all of which sound in tort. (**Exhibit A,** Compl.); *SCOR Reinsurance Co.*, 362 F.3d at 1289-92; *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461-62 (10th Cir. 1995).

81. Additionally, this broad language includes Respondent's claims against the other party named in the state court action because the agreement states that "[a]ny claims or grievances against the Community or the Community's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision." (**Id.**, p. 10).

82. Furthermore, federal and state courts are clear that arbitration agreements extend to tort claims connected to a particular contractual relationship. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999); *Giraldi by & through Giraldi v. Morrell*, 892 P.2d 422 (Colo.

App. 1994).

83. Thus, the fact that Respondent's claims do not arise directly from the agreement, i.e., they are not breach of contract claims, does not impact enforcement of the agreement. *See P&P Indus.*, 179 F.3d at 871.

**THE SCOPE OF THE ARBITRATION AGREEMENT EXTENDS TO MS. PARISH BECAUSE THE AGREEMENT SPECIFICALLY EXTENDS TO MS. EVANS' HEIRS**

84. Because of the broad scope of the Arbitration Agreement, it extends to all of Ms. Parish's claims and Ms. Parish's individual claims.

85. The Arbitration Agreement is binding on Ms. Evans' estate as well as "any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity" and that the "Arbitration Provision shall survive [Ms. Evans'] death." (**Exhibit B,** Arb. Agree**.**, p. 10).

86. Ms. Parish is Ms. Evans' heir and personal representative. (**Exhibit A**, Compl., ¶ 1).

87. Thus, by the plain terms of the agreement, the Arbitration Agreement extends to Ms. Parish's individual claims.

**FIRST CLAIM FOR RELIEF**
**(Order Directing the Parties to Proceed to Arbitration in Accordance with the Terms of the Arbitration Agreement)**

88. Brookdale incorporates the allegations and authority from the preceding paragraphs as though fully set forth here.

89. The Arbitration Agreement is a valid, irrevocable, and enforceable arbitration agreement.

90. No grounds exist under general Colorado contract law defenses to invalidate the Arbitration Agreement.

91. The FFA preempts any Colorado law hostile to the Arbitration Agreement, including the HCAA's arbitration requirements at C.R.S. § 13-64-403.

92. The Arbitration Agreement was executed by Ms. Evans' authorized agent, Ms. Parish.

93. The Arbitration Agreement insures to the benefit of Brookdale.

94. The scope of the Arbitration Agreement extends to Respondent and her claims against Brookdale and its employee in the Arapahoe County District Court lawsuit.

95. Pursuant to the FAA, Petitioner respectfully requests the Court to order Respondent to submit his claims against Brookdale and its employees to binding arbitration in accordance with the Arbitration Agreement.

**SECOND CLAIM FOR RELIEF**
**(Order Enjoining Respondent from Continuing to Pursue their Claims in Arapahoe County District Court in the State of Colorado)**

96. Brookdale incorporates the allegations and authority from the preceding paragraphs as though fully set forth here.

97. The Parties' Arbitration Agreement states, "[a]ny and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of Local, State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether

sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding individual arbitration . . . and shall not be filed in a court of law." (**Exhibit B**, Arb. Agree., p. 8).

98. The Parties' Arbitration Agreement includes "[a]ny claims or grievances against the Community or the Community's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision." (**Id.**, p. 10).

99. The individual named in the Arapahoe County District Court action was an employee of Brookdale at the time of the events underling Respondent's claims.

100. If Respondent is permitted to continue her claims against the other party in the Arapahoe County District Court action, she will violate an order to submit her claims to arbitration in accordance with the Arbitration Agreement. (**Id**.).

101. Therefore, Petitioner respectfully requests the Court to enjoin Respondent from pursuing any claims against Brookdale or the individual named in the Arapahoe County District Court action.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests judgment as follows:

a. An Order compelling the arbitration of Respondent's claims against Brookdale, its agents and employees pursuant to the Arbitration Agreement;

b. An Order enjoining Respondent from pursuing her claims against the parties named in the Arapahoe County District Court action titled *Barbara Parish, individually and as Personal*

*Representative of the Estate of Helen Evans, deceased, v. ARC Greenwood Village, Inc. d/b/a Brookdale Greenwood Village – ALR, et al.*, Case No. 2024CV31919.

c. An Order, pursuant to 9 U.S.C. § 3, staying this case pending completion of arbitration between Respondent and Brookdale; and

d. Any other relief in favor of Petitioner the Court deems just and proper.

Respectfully submitted this 7th day of November, 2024.

*/s/ Rachael E. Bandeira*
Karen M. Shimonsky, Esq.
Rachael E. Bandeira, Esq.
Quintairos, Prieto, Wood, & Boyer, P.A.
216 16th Street, Suite 1100
Denver, CO 80202
Telephone: 720-798-1620
karen.shimonsky@qpwblaw.com
rachael.bandeira@qpwblaw.com
*Attorneys for Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 7th day of November, 2024, a true and accurate copy of the foregoing was filed and served to all counsel of record:

Brian D. Reddick
Robert W. Francis
John M. Landis
Beau W. Duty
Reddick Law, PLLC
One Information Way, Suite 105
Little Rock, Arkansas 72202

and

Michael David Eric McDivitt
McDivitt Law Firm
19 E. Cimarron St.
Colorado Springs, CO 80903
*Attorneys for Plaintiff*

s/ *Rachael Bandeira*
for Quintairos, Prieto, Wood & Boyer, P.A.