IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 24-cv-03118-GPG-STV

ARC GREENWOOD VILLAGE, INC. d/b/a/ Brookdale Greenwood Village – ALR,

Petitioner,

v.

BARBARA PARISH, individually and as a Personal Representative of the Estate of Helen Evans, deceased,

Respondent.

---

# ORDER

---

Before the Court is a Petition to Compel Arbitration (D. 1). The Court GRANTS the motion for the following reasons.

## I. FACTS

This civil action arises from a lawsuit filed in Colorado state court against an assisted living residence community by a former resident's daughter.[1] On or about January 29, 2021, Helen Evans was admitted to Brookdale Greenwood Village (Petitioner), an assisted living residence community (D. 1 at ¶ 18). As part of the admission process, Ms. Evans' daughter and legal representative, Barbara Parish (Respondent), executed a Residency Agreement (*id.* at ¶ 19). The Residency Agreement includes the following arbitration provision:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding

[1] The Court draws the operative facts as set forth in the Petition to Compel Arbitration (D. 1).

> interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of Local, State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law.

(D. 1–2 at 8).

The Residency Agreement explicitly binds "any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity" to the arbitration provision (*id.* at 10).

On September 3, 2024, Ms. Parish, individually and as Ms. Evans' personal representative, filed a complaint against Petitioner in Arapahoe County court alleging negligence, violation of the Colorado Consumer Protection Act, and Wrongful Death related to care and services Ms. Evans received at Brookdale (D. 1 at ¶ 23; D. 1–1). Petitioner filed the instant Petition to Compel Arbitration, arguing that Respondent improperly filed claims in state court that should have been submitted to arbitration pursuant to the Residency Agreement (D. 1). Respondent counters that the Residency Agreement is invalid, and thus, she is not required to abide by the arbitration provision (D. 27).

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs arbitrability questions. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017). Section 4 of the FAA authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing

that such arbitration proceed . . . ." 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). In deciding a motion to compel arbitration, the Court applies a framework similar to that it would apply on a motion for summary judgment—a motion to compel arbitration should only be granted "if there are no genuine issues of material fact regarding the parties' agreement" to arbitrate and the Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (citation modified).

"[T]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked," and the party attempting to compel arbitration bears the burden of "demonstrating a valid arbitration agreement" exists. *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (citations omitted). To determine whether there is a valid arbitration agreement, courts employ a two-step process. The first step requires a court to determine whether there is an agreement that provides the moving party the right to compel arbitration. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). If the movant satisfies the first step, the court must determine whether the allegations in the complaint are within the scope of the arbitration provision. *Id*. The validity, enforceability, and scope of an arbitration agreement are questions of state law. *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014); *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021). However, the Court keeps in mind that the FAA expresses a "liberal federal policy favoring arbitration agreements." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

24 (1983). Consistent with this liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25.

## III. ANALYSIS

As a preliminary matter, the Parties agree there is no factual dispute at issue (*see* D. 29 at ¶ 2). Respondents solely dispute the first prong of the FAA analysis, arguing that the arbitration provision of the Residency Agreement is invalid under section 403 of the Colorado Health Care Availability Act (CHCAA), Colo. Rev. Stat. Ann. § 13-64-403, which requires the inclusion of specific language in any "agreement for the provision of medical services which contains a provision for binding arbitration of any dispute" (D. 27).[2] Indeed, the Residency Agreement indisputably lacks all of the required CHCAA language, and Petitioner does not argue that it is in any way in compliance with the CHCAA. Rather, Petitioner argues that "the FAA preempts the [C]HCAA's arbitration requirements, and the [Residency] Agreement is enforceable despite the absence of [C]HCAA language or any other purported deficiency" (D. 1 at ¶ 55).

The Court agrees that the arbitration provision of the Residency Agreement is valid and enforceable under the FAA. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "preempts state-law rules that 'stand as an obstacle to the accomplishment of the FAA's objectives.'" *Walker v. BuildDirect.com Techs., Inc.*, 733

[2] In her Answer, Respondent also raised the argument that she lacked the authority to enter the Residency Agreement (D. 5 at ¶ 104). However, after a status conference before the Court on September 26, 2025 (D. 29), Respondent withdrew this argument and clarified that her objection to the petition is "on the basis that the arbitration agreement is not compliant with Colorado law" (D. 25 at ¶ 2).

F.3d 1001, 1004 (10th Cir. 2013) (quoting *AT &T Mobility LLC v. Concepcion,* 563 U.S. 333, 343 (2011)). The U.S. Supreme Court has repeatedly noted that "[b]y enacting § 2 . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citation modified). Thus, while "generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening [the FAA], . . . [c]ourts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.* (emphasis in original).

In *Casarotto*, the Supreme Court held that the FAA preempted and displaced a Montana statute that "declares an arbitration clause unenforceable unless notice that the contract is subject to arbitration is typed in underlined capital letters on the first page of the contract." 517 U.S. at 683 (citation modified). The Court stated that the statute directly conflicted with the FAA because it "condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally." *Id.* at 687. The Tenth Circuit has also found state laws limiting the enforceability of arbitration agreements to contravene the purpose of the FAA. *See e.g., THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162 (10th Cir. 2014) (New Mexico common law principle that an arbitration provision may be unenforceable if it applies only, or primarily, to claims that just one party in the contract is likely to bring is preempted by the FAA).

Similarly to the Montana law in *Casarotto*, section 403 of the CHCAA singularly requires arbitration agreements and no other types of contracts to contain certain notice language in a

specific location. The CHCAA requires that arbitration agreements include the following statement:

> It is understood that any claim of medical malpractice, including any claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered or omitted, will be determined by submission to binding arbitration in accordance with the provisions of part 2 of article 22 of this title, and not by a lawsuit or resort to court process except as Colorado law provides for judicial review of arbitration proceedings. The patient has the right to seek legal counsel concerning this agreement, and has the right to rescind this agreement by written notice to the physician within ninety days after the agreement has been signed and executed by both parties unless said agreement was signed in contemplation of the patient being hospitalized, in which case the agreement may be rescinded by written notice to the physician within ninety days after release or discharge from the hospital or other health-care institution. Both parties to this agreement, by entering into it, have agreed to the use of binding arbitration in lieu of having any such dispute decided in a court of law before a jury.

Colo. Rev. Stat. Ann. § 13-64-403(3). The CHCAA further requires the following notice to be "printed in at least ten-point, bold-faced type" immediately preceding the signature lines:

> NOTE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL BINDING ARBITRATION RATHER THAN BY A JURY OR COURT TRIAL.
>
> YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL AND YOU HAVE THE RIGHT TO RESCIND THIS AGREEMENT WITHIN NINETY DAYS FROM THE DATE OF SIGNATURE BY BOTH PARTIES UNLESS THE AGREEMENT WAS SIGNED IN CONTEMPLATION OF HOSPITALIZATION IN WHICH CASE YOU HAVE NINETY DAYS AFTER DISCHARGE OR RELEASE FROM THE HOSPITAL TO RESCIND THE AGREEMENT.
>
> NO HEALTH-CARE PROVIDER SHALL WITHHOLD THE PROVISION OF EMERGENCY MEDICAL SERVICES TO ANY PERSON BECAUSE OF THAT PERSON'S FAILURE OR REFUSAL TO SIGN AN AGREEMENT CONTAINING A PROVISION FOR BINDING ARBITRATION OF ANY DISPUTE ARISING AS TO PROFESSIONAL NEGLIGENCE OF THE PROVIDER.
>
> NO HEALTH-CARE PROVIDER SHALL REFUSE TO PROVIDE MEDICAL CARE SERVICES TO ANY PATIENT SOLELY BECAUSE SUCH PATIENT REFUSED TO SIGN SUCH AN AGREEMENT OR EXERCISED THE NINETY-DAY RIGHT OF RESCISSION.

Colo. Rev. Stat. Ann. § 13-64-403(4). Arbitration agreements that fail to include this required language may be declared invalid by a court. Colo. Rev. Stat. Ann. § 13-64-403(10)(a); *Allen v. Pacheco*, 71 P.3d 375, 381 (Colo. 2003) (noting that non-compliance with sections 13-64-403(3) and (4) "alone would render [an] agreement unenforceable").

Therefore, for the same reasons stated in *Casarotto,* the Court finds the CHCAA poses an "obstacle to the accomplishment of the FAA's objectives" and is pre-empted by the FAA.[3] *See Walker,* 733 F.3d at 1004; *Casarotto*, 517 U.S. at 688 ("The 'goals and policies' of the FAA, this Court's precedent indicates, are antithetical to threshold limitations placed specifically and solely on arbitration provisions."). As a result, the arbitration provision of the Residency Agreement is valid under the FAA. Because there is a valid arbitration agreement and in light of the fact that Respondent does not contest that the scope of the allegations in the Complaint fall outside of the agreement, the FAA requires the Court to enforce the arbitration provision. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

**IV. CONCLUSION**

Accordingly, the Petition to Compel Arbitration (D. 1) is GRANTED. It is FURTHER ORDERED that the clerk of the court is instructed to close this case.

[3] This holding is consistent with other, non-binding, decisions of courts in this District. *See e.g., Morrison v. Colorado Permanente Med. Grp., P.C.,* 983 F. Supp. 937, 943 (D. Colo. 1997) (holding that the FAA preempts the CHCAA because section 403 "place[s] arbitration clauses in medical services agreements in a class apart not only from 'any contract' but also from all over arbitration agreements."); *Watermark Harvard Square, LLC v. Calvin*, No. 17-CV-00446-RM-KMT, 2018 WL 1166707, at *8 (D. Colo. Mar. 6, 2018), *report and recommendation adopted,* No. 17-CV-00446-RM-KMT, 2018 WL 1952587 (D. Colo. Mar. 29, 2018) (granting motion to compel arbitration where agreement lacked required language under section 403 of the CHCAA based on finding that the CHCAA is preempted by the FAA); *Bethany Nursing & Rehab Ctr., LLC v. Amaro*, No. 1:22-CV-03138-RM-SBP, 2024 WL 1286257, at *6 (D. Colo. Mar. 11, 2024), *report and recommendation adopted*, No. 22-CV-03138-RM-SBP, 2024 WL 1282347 (D. Colo. Mar. 26, 2024) ("[T]he FAA trumps the Colorado HCAA, and any defenses to arbitration that may arise from that state statue cannot serve to invalidate the Arbitration Agreement at issue here.").

DATED March 3, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge